IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MODESTA LOPEZ-SANTIAGO, et al.,    §
                                   §
                    Plaintiffs,    §
                                   §   Civil Action No. 3:13-CV-4268-D
VS.                                §
                                   §
COCONUT THAI GRILL, et al.,        §
                                   §
                    Defendants.    §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiffs Modesta Lopez-Santiago ("Lopez"), Maria Martha Guerrero-Bonilla ("Guerrero"), Rey David Contreras-Barriga ("Contreras"), and all others similarly situated alleging overtime wage violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, defendants move for summary judgment, presenting the dispositive question whether defendants were covered under the FLSA for the years in question under an enterprise liability theory. Concluding that plaintiffs have failed to present evidence that would enable a reasonable jury to find that defendants were covered under the FLSA, the court grants defendants' motion and dismisses this action with prejudice.

I

Because this case is the subject of a prior memorandum opinion and order, *see Lopez-Santiago v. Coconut Thai Grill*, 2014 WL 840052, at *1 (N.D. Tex. Mar. 4, 2014) (Fitzwater, C.J.) ("*Lopez-Santiago I*"), the court will recount only the background facts and procedural history that are pertinent to this decision.

Plaintiffs are former employees of defendant Coconut Thai Grill ("Coconut Thai"), a restaurant owned and managed by defendant Marayat Gary ("Gary").[1]  Lopez worked as a cook and dishwasher from December 2009 to October 2013, Guerrero as a cook and dishwasher from April 2010 to September 2011 and again from September 2012 to October 2013, and Contreras as a dishwasher beginning in August 2012 and continuing until at least the filing of this lawsuit.  Plaintiffs contend that while they were employed by defendants, they worked in excess of 40 hours a week, but were not paid overtime.

Plaintiffs brought this suit under the FLSA, seeking to hold defendants liable under both theories of enterprise and individual coverage.  Defendants moved to dismiss plaintiffs' enterprise liability theory under Fed. R. Civ. P. 12(b)(1), and plaintiffs' individual coverage theory under Rule 12(b)(6).  The court denied defendants' Rule 12(b)(1) motion, concluding that it was procedurally improper, but it granted defendants' Rule 12(b)(6) motion and granted plaintiffs leave to replead.  *Lopez I*, 2014 WL 840052, at *1.  Plaintiffs later filed a notice indicating their intention to proceed only on an enterprise liability theory.

Defendants now move for summary judgment on plaintiffs' enterprise liability theory, contending that plaintiffs cannot produce sufficient evidence to establish enterprise liability under the FLSA.  Defendants also rely on evidence that they maintain conclusively

---

[1]In deciding this motion, the court views the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

establishes that they are not covered under the FLSA based on a theory of enterprise liability.

Plaintiffs oppose the motion.[2]

II

When parties move for summary judgment on a claim on which the opposing parties will bear the burden of proof at trial, the moving parties can meet their summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing parties' claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving parties do so, the opposing parties must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing parties' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing parties' failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the opposing parties fail to meet this burden. *Little*, 37 F.3d at 1076.

---

[2]When defendants filed their reply brief, they filed a supporting appendix. The court issued an order declining to consider the appendix because defendants filed it without first obtaining leave of court. Defendants then filed a motion to reconsider the order and/or for leave to file a reply appendix. Because the court is granting defendants' summary judgment motion without considering the contents of the proposed reply appendix, it denies defendants' motion for reconsideration or leave as moot.

III

Defendants' motion presents the question whether plaintiffs have produced sufficient evidence to enable a reasonable jury to find that defendants are liable under the FLSA on an enterprise liability theory—that is, whether the FLSA applies to them at all for the years in question.

A

To establish a claim for overtime compensation under the FLSA's enterprise liability theory, plaintiffs must prove that they were "'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)). Under the FLSA, an "enterprise engaged in commerce or in the production of goods for commerce" is one that

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

In their summary judgment motion, defendants contest only the second prong of enterprise coverage liability. They point to the absence of evidence to support this essential element of plaintiffs' FLSA claim. *See* Ds. Mot. 5 (maintaining that "[b]ecause Plaintiffs cannot raise a material fact dispute on the element of enterprise, Defendants are entitled to summary judgment as a matter of law") and 10 (asserting, in part, that defendants are entitled to summary judgment "because Plaintiffs cannot prove any set of facts in support of their

- 4 -

claim that would entitle them to relief under the theory of enterprise coverage"). They also present evidence in the form of tax returns for the years 2009 through 2013, contending that this proof conclusively demonstrates that Coconut Thai's gross sales and receipts did not equal or exceed $500,000 in any year in which plaintiffs were employed by defendants, and, consequently, that defendants were not subject to FLSA coverage.

In response, plaintiffs acknowledge the existence of the tax returns, but they contend that there is evidence suggesting that the accuracy of these returns is generally suspect, and that defendants appear to have changed their long-standing method of calculating gross sales in 2013, further calling into question whether the 2013 tax return is accurate.

B

Because defendants have pointed to the absence of evidence as to an essential element of plaintiffs' FLSA claim, the court must decide whether plaintiffs have produced sufficient evidence to enable a reasonable jury to find that, for each year in question (2009-2013), defendants' gross volume of sales made or business done was $500,000 or more.

1

Plaintiffs have not produced sufficient evidence for a reasonable jury to find that Coconut Thai's gross sales and receipts equaled or exceeded $500,000 in each of the calendar years 2009, 2010, and 2011. Defendants have presented tax returns for the years 2009 through 2011 that reflect that Coconut Thai's gross sales and receipts equaled $1,506.00 in 2009, $226,048.00 in 2010, and $320,633.00 in 2011. Plaintiffs contend that these tax returns are unreliable, but the only evidence that plaintiffs cite in support of this

- 5 -

contention is the fact that the tax returns for 2009 through 2011 are not signed by Gary, who filed the returns. Plaintiffs maintain that the absence of a signature on a tax return cautions against a presumption that the return is authentic. *See* Ps. Br. 9 (citing *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F.Supp.3d 337, 348 (E.D.N.Y. Sept. 15, 2014)). But plaintiffs do not cite to any evidence that would enable a reasonable jury to find that the tax returns are *not* authentic. And even if the court disregards defendants' evidence of the tax returns for the years 2009 through 2011, plaintiffs have the burden of proving enterprise coverage. Defendants have pointed to the absence of evidence to support this element, and plaintiffs have not produced any evidence that, assumed to be true, would enable a reasonable jury to find that defendants' gross sales and receipts equaled or exceeded $500,000 for the years 2009 through 2011. Plaintiffs merely argue that the tax receipts for these years should not be presumed to be authentic. They have therefore failed to satisfy their obligation to present evidence that, viewed favorably to them, would enable a reasonable jury to find that defendants' gross sales and receipts equaled or exceeded $500,000 for the years 2009, 2010, and 2011.

2

The court reaches the same result for 2012. Defendants have produced evidence that Coconut Thai's tax return for the year 2012 reflects its gross sales and receipts, and they cite to two pieces of evidence to support this contention. Plaintiffs again rely on the absence of Gary's signature from the tax return, arguing that, without the signature, the tax return is not presumed to be authentic. To support this contention, plaintiffs cite the fact that Gary did not

sign the tax returns for 2009 through 2011.  Plaintiffs also cite to the deposition testimony of Kim Vo ("Vo"), the accountant who prepared defendants' tax returns for the years 2012 and 2013.  Vo testified that she was not given supporting documentation to show the actual amount of sales generated by defendants' business, but was instead provided only bank statements, sales tax calculations, and payroll tax calculations.  Plaintiffs also point out that defendants' 2012 tax return was not prepared until more than one year after plaintiffs filed this lawsuit.  But assuming *arguendo* that this evidence is sufficient to call into question the reliability of Coconut Thai's 2012 tax return, plaintiffs still have failed to produce any evidence that, viewed favorably to them, would enable a reasonable jury to find the amounts of Coconut Thai's gross sales and receipts for 2012.  As the court has previously explained, because plaintiffs have the burden of proving enterprise coverage at trial, defendants can move for summary judgment by pointing to the absence of evidence that is sufficient to satisfy this element.  Plaintiffs must then present evidence that, assumed to be true and viewed favorably to them, would enable a reasonable jury to find in their favor.  But plaintiffs have not presented any evidence that would enable a reasonable jury to find that defendants' gross sales and receipts equaled or exceeded $500,000 in 2012.  Plaintiffs have therefore failed to satisfy their summary judgment burden with respect to their FLSA overtime claims for 2012.

3

Finally, the court reaches the same result with respect to the year 2013.  Defendants have produced their 2013 tax return, which indicates that Coconut Thai's gross sales and

receipts for that year equaled $473,311.00.  Plaintiff contends that this number is inaccurate and unreliable for several reasons.  They again cite the fact that the return is not signed by Gary, point to Vo's testimony that she was not provided sufficient supporting documentation to show the actual amount of sales, and point out that the 2013 return was filed late. Plaintiffs cite the fact that, in preparing their tax return for 2013, defendants changed the method used to calculate their gross sales or business done.  Plaintiffs state that, in the years 2010 through 2012, defendants included the amount of tips received from customers by their wait staff when reporting gross sales and receipts on their tax return, but defendants' gross sales and receipts reported on their 2013 tax return included only food and beverage sales, and no tips. Relying on the fact that tips amounted to $78,073.40 in 2012, plaintiffs extrapolate and apply this evidence to 2013, contending that had defendants included tips in calculating their gross sales and receipts, the total in 2013 likely would have exceeded $500,000.  Plaintiffs therefore contend that there is a material fact issue concerning whether defendants meet the gross sales prong of the enterprise coverage test for 2013.

Plaintiffs' argument hinges on the assumption that gross sales and receipts should include tips paid to wait staff.  But the relevant regulations concerning tipped employees and their wage payments under the FLSA indicate that tips are not always to be included as part of gross receipts, and they distinguish compulsory service charges imposed by restaurants (e.g., 15% of the amount of the bill) from tips, which are sums that customers present as gifts or gratuities to recognize services performed.  *See* 29 C.F.R. §§ 531.52, 531.55 (2011). Only service charges, not tips, are included in gross receipts. *See id.* at § 531.55 ("[S]ervice

charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act."); *see also Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *14 (S.D.N.Y. Feb. 1, 2007) (explaining the distinction between a tip and a service charge, and that only the latter becomes part of employer's gross receipts).  Plaintiffs neither allege nor cite evidence suggesting that the tip amount they contend should have been included in calculating defendants' 2013 gross sales and receipts were in fact compulsory service charges, and not tips.  The only evidence regarding defendants' practice of paying tips to workers is the deposition testimony of members of defendants' wait staff, who testified that they were always paid in tips while working for defendants.  Because plaintiffs have produced no evidence that would enable a reasonable jury to find that these tips were in fact compulsory service charges that should be included in the calculation of defendants' gross receipts, the fact that defendants apparently did not include tips in calculating their gross receipts for their 2013 tax return would not enable a reasonable jury to find that defendants' gross receipts equaled or exceeded $500,000.  And plaintiffs have not cited to any additional evidence that would permit a reasonable jury to make this finding.  Accordingly, the court concludes that plaintiffs have failed to satisfy their summary judgment burden with respect to their overtime claims for 2012.

## C

Having viewed the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants, the court holds that a reasonable jury could not find that defendants' gross receipts equaled or exceeded $500,000 for any years in the relevant time period and

that they therefore could be held liable under the FLSA on an enterprise liability theory.

Thus the court grants defendants' motion for summary judgment.

*   *   *

For the reasons explained, the court grants defendants' motion for summary judgment, and it dismisses plaintiffs' lawsuit with prejudice by judgment filed today.

**SO ORDERED**

September 1, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE